UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**MARIE EDWARDS**  **CASE NO. 6:24-CV-01493**

**VERSUS**  **JUDGE DRELL**

**U S COMMISSIONER SOCIAL SECURITY ADMINISTRATION**  **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court recommends that the Commissioner's decision be reversed and remanded for further administrative action.

### Administrative Proceedings

Claimant, Marie Edwards, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for disability insurance benefits and supplemental security income ("SSI") benefits alleging disability beginning on March 12, 2021. (Rec. Doc. 6-1, pp. 213 & 215). Her applications were denied. She then requested a hearing, which was held on May 21, 2024, via telephone before Administrative Law Judge ("ALJ") Robert Grant. The ALJ issued a decision on June 3, 2024, concluding that Claimant has not been under disability within the meaning of the Social Security Act from March 12, 2021, through the

date of the decision. (*Id*. at p. 16). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. *Id*. at p. 6). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on May 3, 1978. She was 42 years old on the alleged disability onset date and 46 years old at the time of the ALJ's decision. She did not complete high school but obtained a GED. (Rec. Doc. 6-1, p. 39). She last worked in 2021. (*Id*. at p. 17). Her prior work history includes housekeeping at hospitals, nursing homes, and motels, as well as some work in the fast-food industry. (*Id*. at p. 40). She lives at home with her special needs daughter and her son comes over to help her with things around the house, dishes, and laundry. (*Id*. at pp. 39 & 264). She is able to comb her hair and shower but has difficulty getting in and out of the bathtub. (*Id*.). She has trouble putting on her pants, shoes, and socks. (*Id*. at p. 264). She has trouble standing and walking and has used a walker. She can stand for approximately 20 minutes and sit for approximately 30 minutes before she needs to get up to change position or lay down. She does not have a driver's license. (Rec. Doc. 6-1, p. 38). She alleged that she has been disabled since March 2021 due to

2

chronic leg pain caused, in part, by a surgery to remove a cancerous tumor from her thigh. (*Id*. at p. 72). She also suffers from rheumatoid arthritis which causes pain and swelling in her wrists, shoulders, ankles, and knees. (*Id*. at p. 39). She cannot wear shirts with buttons or handle picking up small things, like coins. (*Id*. at p. 43).

The medical records since the alleged onset date in the record reveal the following pertinent history:

- On March 22, 2021, Claimant reported to the emergency department at Ochsner University Hospital & Clinics ("UHC") during one of her work shifts complaining of generalized weakness and low-grade fever. Claimant explained that she was recently diagnosed with spindle cell sarcoma of her right thigh and had swelling and localized pain. The tumor removal surgery was tentatively scheduled for March 26, 2021. Testing revealed that Claimant was severely anemic, and she was admitted for blood transfusions and additional testing including chest x-rays, CT scans, colonoscopy, and endoscopy on March 24, 2021. Claimant was discharged on March 24, 2021, with Acetaminophen-Hydrocodone ("Norco 5) for pain. (*Id*. at pp. 390-406).

- On March 29, 2021, Claimant presented to LCMC Health for evaluation of her tumor. Claimant's surgery was cancelled as it was determined that she would benefit from radiation therapy. Over the next several months, Claimant met with LCMC for planning, radiation therapy, and treatment. She did not return to work due to worsening pain in her leg. (*Id*. at pp. 594-608).

- Claimant completed neoadjuvant radiation therapy in June 2021. On July 12, 2021, Claimant presented to LCMC Health for post radiation therapy follow up. She was undergoing wound care for post-radiation ulceration of the skin. (Rec. Doc. 6-1, p. 591).

- Claimant's sarcoma was surgically removed on August 5, 2021. Due to the large size of the defect, the plastic surgery unit was called to assist with closure. She was discharged on August 7, 2021, with Hydrocodone, Gabapentin, wound vac, and a walker. (*Id*. at pp. 521-575)

- On August 9, 2021, Claimant presented to LCMC Health for surgical follow up. She reported post-op pain and was using a walker. (*Id*. at p. 520).

- On August 16, 2021, Claimant presented to LCMC Health for surgical follow up. She reported drainage and continued pain unresolved with Gabapentin and Tylenol. She noted difficulty ambulating and was still using a walker. Claimant was advised on multimodal pain control with Ibuprofen, Gabapentin, and Percocet. (*Id*. at pp. 515-519).

- On August 23, 2021, Claimant presented to LCMC Health for surgical follow up. She reported that the drain site is still draining, and the incision opened a bit with drainage. She noted redness, tenderness, and tightness along the incision with movement. (*Id*. at p. 514).

- On September 20, 2021, Claimant presented to LCMC Health for surgical follow up. She reported a small amount of drainage and voiced her concerns about returning to work. (*Id*. at p. 508).

- On November 5, 2021, Claimant presented to LCMC Health for surgical follow up. She reported a "popping" sensation occurring in her lower right thigh and pain in the area when she walks. (Rec. Doc. 6-1, pp. 489-492).

- On November 17, 2021, Claimant presented to LCMC Health for surgical follow up. She reported continued tightness and intermittent swelling of her right thigh and a small opening along the incision with some mild drainage. (*Id*. at p. 488).

- On December 29, 2021, Claimant presented to LCMC Health for surgical follow up. Claimant reported sharp pains along the incision that radiates to her knee. She noted that Ibuprofen provided minimal relief. (*Id*. at p. 487)

- On February 18, 2022, Claimant presented to LCMC Health for surgical follow up. She reported two weeks of right lower thigh swelling and pain which was increased with weight bearing. (*Id*. at p. 477).

- On March 7, 2022, Claimant presented at LCMC Health for surgical follow up. She reported right lateral leg pain which she described as stabbing and radiating up to her hip and down to her mid-calf. She reported that the

pain is worse with movement and stated that the pain was still preventing her from working and climbing stairs. She also reported swelling to her lower right leg that eventually resolved with elevation. Claimant was ordered to continue Gabapentin for neuropathic pain but was supplied handouts for pain management clinicians for treatment of chronic pain. (*Id*. at p. 475).

- On March 15, 2022, Claimant presented to SWLA Center for Health Services in Lafayette to establish primary care. Claimant reported leg swelling and pain since her surgery and noted that she was unable to walk at times due to pain. She reported that cleaning and increased activity worsens the pain. Claimant received a referral for physical therapy. (*Id*. at p. 618)

- On March 28, 2022, Claimant presented to Moreau Physical Therapy where she was diagnosed with right leg pain, stiffness of right hip, stiffness of right knee, difficulty walking, and muscle weakness. She reported significant pain, tenderness, and weakness. She was no longer using a walker and noted that pain medication helps to relieve pain but makes her drowsy. She reported difficulty walking, completing household chores, and difficulty dressing/bathing. She was assessed to have functional strength deficits, limited functional mobility, and increased fall risk. (Rec. Doc. 6-1, p. 644).

- Records provided show that Claimant continued physical therapy at Moreau Physical Therapy from March 2022 until at least May 26, 2022. On May 26, 2022, Claimant had attended 13 treatment sessions. Per the progress notes, Claimant had improved tolerance to ambulate around her home but continued to have difficulty walking in her community. Claimant continued to report pain in her right upper leg. The provider opined that Claimant was making slow progress towards her goals due to the severity of deficits at the onset. Claimant demonstrated limited functional mobility and increased fall risk and reported functional deficits such as difficulty walking, completing household chores, and difficulty dressing/bathing. Claimant was described as motivated. (*Id*. at p. 681)

- On July 7, 2022, Claimant presented to SWLA Center for Health Services in Lafayette for a follow-up. She reported that Gabapentin causes her vertigo. She continued to report leg pain and swelling and was emotional with increased stress regarding her health. (*Id*. at p. 755).

5

- On September 9, 2022, Claimant presented to LCMC Health for surgical follow up and a lung mass found on February 7, 2022 imaging. She reported sharp right thigh pain that begins above her knee and shoots to her hip. She explained that she was uncomfortable taking Gabapentin because it makes her feel dizzy. She also reported that her right upper chest "feels funny." (*Id*. at p. 741).

- On November 7, 2022, Claimant presented to SWLA Center for Health Services for right leg and arm pain and swelling. She reported that reaching, lifting, and sleeping increases the pain. She was prescribed Hydrocodone-Acetaminophen for pain. (*Id*. at p. 762).

- On September 29, 2023, Claimant presented to SWLA Center for Health Services for complaints of left knee stiffness and pain, and right arm/wrist weakness and pain that radiates to her elbow. She was prescribed Tramadol for pain. (*Id*. at p. 770).

- On October 20, 2023, Claimant presented to SWLA Center for Health Services where she reported pain all over, including her left knee and side. (*Id*. at p. 806).

- On February 9, 2024, Claimant presented to Our Lady of the Lake ("OLOL") Rheumatology where she reported that she has sharp left wrist, thigh, and groin pain with swelling. She was diagnosed with rheumatoid arthritis and osteoarthritis of both knees after examination, blood tests, and x-ray imaging. Claimant is not a candidate for steroids due to diabetes. (Rec. Doc. 6-1, p. 816).

The vocational expert testified that Claimant's prior work experience included unskilled medium and light duty jobs. (*Id*. at p. 45). When asked by the ALJ, the vocational expert opined that an individual of Claimant's same age, education, and work experience who was limited to lifting up to 10 pounds occasionally, standing and walking only two hours out of an eight-hour workday, and sitting for only six

hours out of an eight hour workday with normal breaks could not perform Claimant's past work. (*Id*. at pp. 45-46). Likewise, the vocational expert found that if the hypothetical individual was only able to stand and walk for a few minutes during a workday and was not able to sit for a total of six hours in an eight-hour workday, there would be no jobs in the national or regional economy that such a person could perform. (*Id*. at p. 46). Notably, the vocational expert was not given similar hypotheticals about sedentary jobs.

The ALJ found that Claimant suffered from the severe impairments of obesity, residuals status-post leg tumor removal, diabetes, unspecified rheumatoid arthritis, and osteoarthritis. (*Id*. at p. 17). Nonetheless, the ALJ found Claimant was not disabled because she had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). (*Id*. at p. 18). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

The Commissioner's findings must be affirmed as conclusive when they are supported by substantial evidence. 42 U.S.C. § 405(g); *Martinez*, 64 F.3d at 173. In determining whether the Commissioner's findings are sufficiently supported, a court must carefully examine the entire record but cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa*, 895 F.2d at 1022. To that end, the court may not re-assess credibility or independently resolve conflicts in the evidence. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience. *Wren*, 925 F.2d at 126.

## B.     <u>Entitlement to Benefits</u>

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). *See also Smith v. Berryhill*, 139 S. Ct. 1865, 1772 (2019). SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). *See also Smith*, 139 S. Ct. at 1772. A person is disabled "if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if her physical or mental impairment or impairments are so severe that she is unable do her previous work and considering her age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B).

C. **<u>Evaluation Process and Burden of Proof</u>**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work she did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite her physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if she can still do her past relevant work and at the fifth step to determine whether she can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

While the claimant bears the burden of proof on the first four steps, the Commissioner assumes the burden on the fifth and must show that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v.*

*Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

  **D.** **The ALJ's Findings and Conclusions**

  The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since March 12, 2021, the alleged onset date. (Rec. Doc 6-1, p. 17). This finding is supported by substantial evidence in the record.

  At step two, the ALJ found that Claimant has the following severe impairments: obesity, residuals status-post leg tumor removal, diabetes, unspecific rheumatoid arthritis, and osteoarthritis as well as the non-severe impairments of mild nodular of pleural surface and lung mass and history of lymph node resection. (*Id.*). This finding is supported by substantial evidence in the record.

  At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (*Id.* at p. 18). Claimant does not explicitly challenge this finding.

The ALJ found Claimant has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). (*Id*.). Claimant challenges this finding.

At step four, the ALJ made no finding about the capacity for past relevant work contending that "this information is not material because all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education, and residual functional capacity. Therefore, the individual can adjust to other work." (*Id*. at p. 20). Claimant challenges this finding to the extent she challenges the ALJ's RFC finding.

At step five, the ALJ found that a significant number of jobs which Claimant was capable of performing existed in the national economy. (*Id*.). Claimant challenges this finding to the extent she challenges the ALJ's RFC finding.

E. **The Allegation of Error**

Claimant alleges the ALJ erred by failing to articulate a rational, medical, and evidentiary basis, including failing to question the vocational expert about the sedentary work level, in assessing Claimant's RFC.

F. **Whether the ALJ properly developed the record and properly assessed Claimant's RFC.**

Claimant challenges the ALJ's RFC finding that she is capable of performing the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, Claimant alleges that the ALJ failed to articulate a rational, medical,

12

and evidentiary basis, including failing to question the vocational expert about the sedentary work level or consider the side effects of medication on Claimant, for ruling that the Claimant could perform the full range of sedentary work on a daily basis, in a work week of forty hours, without any additional restrictions, and improperly relied on his own lay interpretation of the medical evidence in assessing her RFC.

A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

Here, the ALJ ruled that Claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). (p. 18). Per 20 CFR 404.1567(a) and 416.967(a):

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

In determining such, the ALJ found that while "the claimant did make a number of complaints consistent with her current allegations, complaining of history of pain from osteoarthritis of the knees, chronic right pain through the ankle and right leg edema, the intensity, duration, and frequency of such complaints are undermined by the claimant's treatment history and activities of daily living." (Rec. Doc. 6-1, p. 19)(internal citations omitted). To support this finding, the ALJ relied on the state's consultative examiner August 2022 physical examination which found that Claimant had "5/5 motor strength in the left leg and 4/5 motor strength in the right leg due to pain, normal range of motion of all joints, as well as demonstrated antalgic gait with difficulty ambulating, sitting, and climbing on the exam table."

(*Id.*). Specifically, the ALJ found that "[o]besity, residuals status-post leg tumor removal, diabetes, unspecific rheumatoid arthritis, and osteoarthritis significantly affects her ability to stand, walk, and sit for prolonged periods, as well as reduce her lifting capacity to no more than ten pounds occasionally;" however, he found that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (*Id.*).

The ALJ first points to the state agency consultants' October/November 2022 and December 2023 examinations where the disability examiner opined that Claimant retained the ability to perform sedentary work. (*Id*); *see also* Rec. Doc. 6-1, p. 62. The ALJ dismisses the August 2022 state agency consultant examination where it was opined that Claimant could walk occasionally in an 8-hour workday, had limited ability to bend or stoop, and had severe difficulty squatting associated with unsteadiness and right lower extremity pain" contending that there was "no opinion for the undersigned to determine persuasiveness." (*Id.*). In concluding that Claimant could perform sedentary work despite these limitations, the ALJ found that "[g]reater limitations have not been proven as trends in the claimant's physical examinations typically revealed limited symptomatology and little or no deficit of extremity function." (*Id.* at p. 20).

Claimant contends that this case requires a remand as a matter of law because there was no rational, medical, and evidentiary basis for ruling that Claimant could perform the full range of sedentary jobs on a daily basis, in a work week of forty hours, without any additional restrictions. (Rec. Doc. 9, p. 4). Specifically, Claimant points to the ALJ's failure to question the vocational expert about sedentary work, failure to consider the side effects of pain medication, and failure to properly consider updated medical records regarding her rheumatoid arthritis. (*Id*. at p. 6).

In response, the Commissioner maintains that the "ALJ thoroughly considered all the evidence of record to determine the severity of [Claimant's] impairments, properly weighed opinion and subjective evidence, and relied on the Grid rules to find [Claimant] not disabled because she could perform work existing in significant numbers in the national economy." (Rec. Doc. 15, p. 1). As summarized by the Commissioner:

> Because [Claimant] proved disability under the first four prongs of the sequential evaluation process, at the fifth step, the Commissioner had the burden of going forward with evidence that Plaintiff was able to perform other work in the national economy, either by relying on a vocational expert's testimony or by use of the Grids of Appendix 2, Subpart P of the Regulations. The ALJ chose to rely on the Grids, specifically Grid Rule 201.28 and 201.21, to find that Plaintiff was not disabled.

(*Id*. at p. 8)(internal citations omitted). Accordingly, per the Commissioner, the ALJ did not need the testimony or opinion of the vocational expert because he relied on the Grids. (*Id*.).

16

The Court finds that the ALJ erred when it relied solely on the medical vocational guideline grids to determine that there is work in the national economy that Claimant could perform despite her disability. As the Fifth Circuit held:

> If impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that the claimant can perform. If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy.

*Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)(internal citations omitted).

Here, Claimant testified, and the medical records detailed above support, that Claimant has nonexertional impairments including pain, swelling, and the inability to stand or sit for limited periods of time. The ALJ rejected Claimant's claims of nonexertional impairments citing the state agency consultants' November 2022 and December 2023 examinations; however, these examinations were made prior to Claimant's 2024 rheumatoid arthritis diagnosis and should thus be reevaluated.

Further, pursuant to Medical-Vocational Rule 201.00(h)(3):

> Nevertheless, a decision of "disabled" may be appropriate for some individuals under age 45 (or individuals age 45-49 for whom rule 201.17 does not direct a decision of disabled) who do not have the ability to perform a full range of sedentary work. However, the inability to perform a full range of sedentary work does not necessarily equate with a finding of "disabled." Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base. It

17

requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work.

The Court finds the record devoid of such an individualized determination.

Lastly, Social Security Ruling 96-8p states that the side effects of medication must be considered when making an RFC assessment: "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication.)." At the hearing, Claimant was asked if she experiences any side effects from her medication and she explained that she fell while taking a walk in the yard and attributed it to her medication. (Rec. Doc. 6-1, p. 38). The Commissioner maintains that Claimant does not cite to any evidence that she ever mentioned negative side effects to any of her physicians (Rec. Doc. 15, p. 4); however, a review of the medical records indicates several times where Claimant reported that her medication made her drowsy, dizzy, and caused vertigo. (*See* Rec. Doc. 6-1, pp. 644, 741, & 755). Accordingly, it was error for the ALJ not to consider the side effects of her medication when making his RFC assessment.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the

18

fourth sentence of 42 U.S.C. § 405(g) with instructions to again evaluate Claimant's residual functional capacity as provided in the foregoing analysis. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[1]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

---

[1] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 7th day of January, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).